93 So.2d 720 (1957)
Walter WAHRENDORFF et al., Appellants,
v.
Leo H. MOORE et al., Appellees.
Supreme Court of Florida, En Banc.
March 20, 1957.
Rehearing Denied May 2, 1957.
Ward & Ward, Miami, for appellants.
Von Arx, Von Arx & Hope, Miami, for appellees.
THORNAL, Justice.
Appellants Wahrendorff, who were plaintiffs below, seek reversal of a final decree dismissing their complaint in equity praying *721 for the cancellation of certain restrictions on the use of a parcel of land.
The determining points are whether the restrictions actually existed and if so, whether the proofs were adequate to justify cancelling the same.
In 1938 a plat of Flagler Groves Estates was recorded in Dade County. On the face of the plat under a heading reading "Restrictive Covenants" appeared in part the following:
"1. The official County Zoning Regulations for the area shall be observed.
* * * * * *
"4. There shall be no more than a single residence on each lot which shall be used for residential purposes only and shall be used and limited to the use of single family and the dependents and guests thereof. This section shall not apply to Lots 1 to 7, inc., Block 2 of attached plat."
The plat showed that the restrictions were approved by the Dade County Zoning Director and the subdividers of the subdivision. On Lots 1 to 7, inclusive, Block 2, described as an exception to the restriction, was located the well known Rare Bird Farm. Appellants owned Lot 8, Block 2, located immediately south of the Bird Farm and facing U.S. Highway No. 1. The highway existed when the subdivision was platted although it was then a two-lane road as contrasted to the heavily traveled four-lane highway now existing.
Appellants alleged in their complaint that over the years conditions had so changed that the restrictions had become an unjustifiable burden on the use of their lot. In the meantime, the County Zoning Board has zoned the lot for business uses. To support the alleged changed conditions appellants cite the general development in the area, the tremendously increased traffic on U.S. Highway 1 and the fact that a motel has been constructed in violation of the restrictions in Block 1 of the subdivision. Block 1 is north of the Bird Farm and the motel is in the northwest corner of the Block.
Appellees responded with the allegations that the covenants appearing on the plat restricting the use of the property for residential purposes were for the benefit of all purchasers of lots in the subdivision. They assert that they have constructed expensive residences on their lots in reliance on the restrictions. They, of course, allege that conditions have not sufficiently changed to justify equitable interference with their contended contractual rights under the circumstances.
The Chancellor heard all of the testimony and in the ultimate agreed with the appellees who were among the defendants. The final decree dismissing the complaint was entered. Reversal of this decree is now sought.
On appeal the appellants contend that the so-called restrictive covenants appearing on the face of the plat were not included in each of the deeds. It is their position that these covenants as a matter of law never became effective and should not now be enforced. In addition they contend that the changed conditions in the area justify the cancellation of the restrictions as to their lot if it should be concluded that the restrictions were once effective.
On the other hand the appellees contend that the restrictions were binding and that there has not been a sufficient showing to justify cancelling them.
On the basic point as to whether the restrictions came into being upon the recording of the plat and the subsequent sale of lots according to the plat, we agree with the Chancellor. The record here reveals that each deed subsequent to the plat referred thereto and in substance recited that the property was "subject to restrictions of record". The restrictions were not repeated verbatim. Although strangely enough the authorities on the subject are sparse, we are of the view that a deed and *722 a plat which includes the property granted must be read together and whatever properly appears on the plat should be considered a part of the deed. Conditions, reservations and restrictions shown on the face of the recorded plat are notice to subsequent purchasers who accept conveyances based on the plat. 14 Am.Jur., Covenants, Conditions and Restrictions, Sec. 203, p. 615. Although we have never passed upon the point directly, we have in a number of cases construed deeds of conveyance in the light of provisions or reservations shown on the recorded plat of the subdivision involved. Hall v. Snavely, 93 Fla. 664, 112 So. 551; McCorquodale v. Keyton, Fla. 1953, 63 So.2d 906; Burnham v. Davis Islands, Inc., Fla. 1956, 87 So.2d 97.
It is true, as contended by appellants, that the law favors the free use of real estate and restrictions on usage will customarily be strictly construed. Nevertheless, such restrictive covenants are valid and will be recognized and enforced when established by contract between the parties involved. In a case such as this the mere filing of the plat containing the restrictive covenants does not in and of itself subject the land to the restrictions of the covenants so long as the title to the property remains in the subdivider. However, upon a severance of title by the grant of one or more lots according to the plat and by reference thereto, the restriction then springs into existence and becomes binding as between the subdivider and his purchasers and as between the purchasers inter sese.
We therefore conclude, as did the Chancellor, that the lots involved in this subdivision were subject to the restrictive covenants shown on the face of the plat.
We come to the second point as to whether there was an adequate showing of changed conditions that would justify cancelling these contractual restrictive covenants. In Dade County v. Thompson, 146 Fla. 66, 200 So. 212, we held in substance that to justify the removal of restrictive covenants such as those before us, it must be alleged and proved that conditions and circumstances existing at the time the restrictions were placed on the land have changed to the extent that the effect of the covenants has been brought to nought. We there stated that the test to be applied is whether or not the original intent of the parties to the restrictive covenants can be reasonably carried out or whether the changed conditions are such as to make ineffective the original purpose of the restrictions. See also, Allen v. Avondale Co., 135 Fla. 6, 185 So. 137; 8 Fla.Jur., Covenants and Restrictions, Sec. 40.
In Dade County v. Thompson, supra, we further pointed out that each case in which cancellation of such restrictions is sought must stand or fall on the equities presented and the evidence offered to support the position of the parties. In the instant case the principal evidence of substantial changes tendered by the appellants was the widening of U.S. Highway No. 1, the substantial increase in the flow of traffic and the single violation of the restrictions in another block in the subdivision. Appellants also showed that the County Zoning Board had rezoned the particular lot in question for business uses. As to the effect of the rezoning in cases such as this, we are of the view that such action by an official body is admissible in evidence but it is not conclusive. In and of itself it will not shift the burden of proof to the opposite party. It is merely a fact to be considered along with all of the other evidence pointing to the same ultimate fact. The restriction here provided that "zoning regulations for the area shall be observed." However, reference to the zoning regulations reveal that by the terms thereof in the event of a conflict between a restrictive covenant and the regulation, the one providing "the more restrictive requirements shall prevail". Hence, here as between the two, the residential requirement of the covenant prevails.
*723 As against this showing, the appellees, all of whom are other lot owners in the same subdivision, pointed to the proposition that they had acquired their property in reliance upon the restrictions, they have built substantially valuable residences on the various lots and that in their view, the lifting of the restrictions from a particular lot would not only greatly affect the value of their property adversely but would also be the inception of a sort of chain reaction or "creeping eruption" that would in the ultimate destroy the value of the property in the subdivision for residential purposes. They too supported their position by competent evidence.
In such a situation we must give due cognizance to the fact that the Chancellor heard all of the evidence, evaluated the weight thereof, had an opportunity to determine the credibility of witnesses and in the ultimate was in a much better position than this Court to determine the equities on the basis of the evidence presented. We cannot conclude from the showing made that his decision was erroneous.
We have not overlooked the existence of the Rare Bird Farm, a commercial enterprise immediately north of appellants' lot. We do not give any substantial weight to the effect of this enterprise for the reason that it was in existence when the subdivision was established; it was specifically excluded from the restrictive covenants and it was in full operation when appellants purchased their lot. True, the business of the Bird Farm has increased but certainly it cannot safely be concluded that such an increase in business was not anticipated at the outset. Appellants therefore cannot rely upon this as evidence of a change in conditions that would justify removing the contractual restrictions.
The decree appealed from is 
Affirmed.
THOMAS, Acting C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.
BIRD, Associate Justice, and HOBSON, J., dissent.
BIRD, Associate Justice (dissenting).
I fully concur with the first part of the excellent opinion prepared by Mr. Justice THORNAL in this cause, wherein he concludes that deeds to the lots in the subdivision carried the covenants set out and contained in the plat of such subdivision, and I agree that the findings of the Chancellor who heard the evidence should be accorded great weight, but I cannot agree with his conclusions.
The plaintiffs own Lots 8 and 9, Block 2, Flagler Estates, in Dade County. Lot 9 lies immediately east of Lot 8 and is occupied by plaintiffs as their home.
The zoning board of Dade County has, since the filing of the plat of said subdivision, zoned Lot 8 of Block 2, along with other property abutting U.S. Highway 1, for business.
Said Lot 8 is in the extreme southwest corner of the subdivision and is the only lot in Block 2 facing said highway which is effected by restriction No. 4 of the subdivision plat.
Many changes affecting the character of the property along said highway have taken place since the plat was filed, among which are the conversion of the two-lane state road into the very busy U.S. Highway No. 1, and the growth of the Rare Bird Farm, from a modest beginning to one of the major attractions of the Florida East Coast, with its attendant daily hosts of people and the consequent increase of traffic.
It is my view that the First "Restrictive Covenant" on the plat, which reads,
"1. The official County Zoning Regulations for the area shall be observed"
is a contract as well as the Fourth, which restricts this lot to one-family dwelling. When the zoning board zoned this lot for limited business a conflict was created between *724 the two covenants and the question now is which should prevail. The law is certain that free use of real estate is favored and restrictions on usage will be strictly construed. It follows, therefore, that the first restriction, being the more liberal, should be applied here.
In Washingtonian Apartment Hotel Co. v. Schneider, Fla., 75 So.2d 907, 908, Mr. Justice Thomas, speaking for the Court said:
"It is the rule recognized by this Court in Moore v. Stevens, 90 Fla. 879, 106 So. 901, 904, 43 A.L.R. 1127, that such covenants, restraining the free use of real property, are to be strictly construed in favor of the grantee and `substantial ambiguity or doubt must be resolved against the person claiming the right to enforce the covenant'".
The provision of the zoning regulations which provides that when there is a conflict between the regulations and the covenant the "more restrictive requirements shall prevail", can be no deciding factor here because the plat provides otherwise.
If it were not for the fact that the parties by their respective deeds based upon the plat had agreed that "The Official Zoning Regulations for the area shall be observed", then the more restrictive requirements would prevail.
It seems to me that when, as here, the zoning authorities who are charged with the important duty of determining the question of zoning a great county of many conflicting interests, including that of the public as well as the immediate parties, have acted their determination should carry great weight with the courts and be considered prima facie valid, as here, where the parties have so agreed their acts should be final, unless clearly shown to be unreasonable, oppressive or confiscatory.
A glance at the plat of the subdivision, in view of the present conditions, shows that the restrictive covenant, No. 4, if applied to this lot. located as it is in the extreme southwest corner of the subdivision, surrounded by the busy four-lane U.S. Highway 1 on the west, South Street on the south, the Rare Bird Farm on the north and the home of the plaintiff on the east, separated and remote from the other residential lots, and is undesirable, unsuitable and valueless for one-family residence, would amount to confiscation and be unreasonable and oppressive, and should not be enforced.
Mr. Justice Terrell, speaking for the majority of the Court in Siegel v. Adams, Fla., 44 So.2d 427, 428, said:
"Zoning restrictions, like other phases of the law, are subject to removal or change when the reason for them or the circumstances that prompted them ceases. When they become obsolete or run afoul the public welfare would seem to be a good test to prompt the time for change or removal. The public welfare is a concept that broadens with changing times and circumstances and it now embraces many species of regulations that the courts of yesterday would not have brought within its range. There must be a positive showing of physical, economic or social change rather than esthetic or group caprice to justify the release of zoning regulations. Neither will they be released at the behest of community or group pressure, if in doing so constitutional guaranties are undermined."
Consideration of evidence of the plaintiffs, and an inspection and study of the plat, clearly shows that the planners and owners of the subdivision anticipated the probable change of the character and usefulness of the land as the vicinity developed, and for that reason considered provision No. 1 of the restriction first in importance and so appropriately placed it first on the plat. To subordinate this provision to the Fourth restriction is to nullify the plain intent of the planners.
The evidence of the respondents fails to show that they are damaged by the zoning of this isolated lot for business. At most it *725 shows that they have only a fear that such action will start a kind of creeping erosion which will ultimately destroy their property for residential purposes.
I think the decree appealed from should be reversed.
HOBSON, J., concurs.