Carl ROUSE and Linda W.
Rouse, Appellants,

v.

UNION TOWNSHIP, Appellee,

and

Appanoose County, Iowa, the Moravia Community School District, and any Unknown Heirs, Devisees, Grantees, Assignees, Successors in the Interest and any Unknown Spouses, and the Unknown Claimants of the Following Described Real Estate Situated in Appanoose County, Iowa: That Portion of the Southwest Quarter of the Southeast Quarter, Section 3, Township 70 North, Range 16 West of the 5th P.M. in Appanoose County, Iowa, Consisting of Approximately one Acre in the Southeast Corner Thereof, Used or Previously Used for Schoolhouse Purposes, or any Similarly Described Real Estate, Defendants.

No. 93–1923.

Supreme Court of Iowa.

April 26, 1995.

Rehearing Denied June 21, 1995.

Daniel P. Wilson of Drake, Wilson and Jay, Centerville, and Timothy A. Lynch of Van Orsdel, Lynch & Rouse, L.C., Des Moines, for appellant.

Mark Kruse, County Atty., for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

In this equitable action, Carl and Linda Rouse (the Rouses) appeal from the district court's order on a rule 179(b) motion quieting title to a small parcel of land known as Fairview school (school) in Union township (township). *See* Iowa R.Civ.P. 179(b). (All references in this opinion to "school" refer not only to the building itself, but also to the approximately one-acre of land upon which the building sits, and any improvements located thereon.) Following a bench trial, the court originally ordered that the school revert to the Rouses under the provisions of Iowa Code section 297.15 (1989), upon their payment of the value of the school to the district.

The Rouses raise three issues on appeal. First, they contend that the township's rule 179(b) motion raised a new legal theory with the court, which the rule prohibits. Second, they urge that the court in its order on the rule 179(b) motion erroneously interpreted Iowa Code section 297.22 to strip the Rouses of what they claim is their vested reversionary interest in the school. Last, the Rouses allege their vested reversionary interest invalidates that part of the court's rule 179(b) order quieting title to the school in the township.

We conclude the district court did not err in quieting title to the school in the township. We therefore affirm its judgment doing so. We reach our conclusion on a basis different from that relied on by the district court. So we need not decide whether the district court was correct in deciding the case under the rule 179(b) motion.

I. *Background Facts.*

The approximately one-acre tract of land at issue is located in Union township, within the Moravia community school district, in Appanoose County. It housed a school beginning about 1874. Over the years, the properties adjoining the school changed hands several times.

The school functioned as such until the end of the 1957–58 school year. The school was then reorganized into the district. It was no longer used as an educational site.

At this point, the township trustees voted to rent the school from the district. The trustees made numerous improvements to the site, including a perimeter fence. They paid all electrical bills on the building until 1990. The building became the site for township, political, and farm organization meetings.

Elvin G. Stocker acquired ownership of all the land bordering the school in 1947. Elvin died in 1985. His wife, Minnie V. Stocker, inherited his interest in the land surrounding the school. She deeded this interest to the Rouses in 1990. Until the final conveyance to the Rouses in 1990, the deeds of conveyance always reserved the one-acre tract for school house purposes.

At this point the dispute over who owned the school began. After considerable wran-

gling between the township and the Rouses, the district by quit claim deed conveyed its interest in the school to the township.

## II. *Background Proceedings.*

The Rouses then filed an action against the district and the township, asking the district court to (1) quiet title in the Rouses, and (2) enjoin the district from conveying the school to the township. The court denied the Rouses' injunction request. The district then disclaimed any interest in the school, asking the court to determine ownership.

Following a bench trial, the court rejected the ownership claims of the Rouses and the township, quieting title in the district. This ruling was followed by an Iowa Rule of Civil Procedure 179(b) motion by the township. The court's ruling on this motion quieted title in the township. It is from this ruling that the Rouses appeal.

## III. *Scope of Review.*

 Quiet title actions are equity actions. So our review of such actions is de novo. Iowa R.App.P. 4; Iowa Code § 649.6; *Hosteng Concrete & Gravel, Inc. v. Tullar,* 524 N.W.2d 445, 448 (Iowa App.1994). In our de novo review, we are not bound by the factual findings of the district court nor its legal conclusions. *Bernet v. Rogers,* 519 N.W.2d 808, 810 (Iowa 1994).

## IV. *The 179(b) Motion.*

In its initial ruling, the district court reached several conclusions. First, the Rouses are the current title owners of the real estate from which the original one-acre schoolhouse tract was taken.

Second, under Iowa Code section 297.15, the school reverts to the Rouses if they pay the value of the school to the district. *See* Iowa Code §§ 297.15 ("Any real estate, owned by a school district . . . and heretofore used as a schoolhouse site[,] shall revert to the then owner of the tract from which the same was taken, provided that said owner of the tract last aforesaid shall, within the time hereinafter prescribed, pay the value thereof to such school district."); 297.16 (appraisers appointed to value property if school district and holder of reversionary interest cannot agree on value); 297.17 (notice to parties of time for appraisal); 297.18 (providing for actual appraisal); 297.19 (allowing school district to sell school site to any other person at appraised value if holder of reversionary interest fails to pay appraised value within twenty days of filing of appraisal with county sheriff); 297.20 (improvements on school site may, at request of either party, be appraised and sold separately).

Third, until such time as the conditions in sections 297.15 through 297.20 are met, ownership of the school remains in the district.

Last, the quit-claim deed from the district to the township is void because the district could only dispose of its interest in the school by following the requirements of sections 297.15 through 297.20. The court then quieted title in the school to the district "as against the interests of all parties named in this cause."

In its rule 179(b) ruling, the district court reached quite different conclusions and a different result. First, according to the court, "[Iowa Code] section 297.22 clearly creates an exception to the application of the reversionary rights of a land owner in a former schoolhouse site set out in sections 297.15, et. seq." *See* Iowa Code § 297.22 ("The board of directors of a school [district] may sell . . . or grant . . . any interest in real property to . . . a . . . township if the real property is within the jurisdiction of both the grantor and grantee. In this case sections 297.15 to 297.20 . . . do not apply to the transaction."). In short, if a school district sells or grants any interest in a school site to a township, the reversionary rights of the landowner from whom the site was taken are abolished.

Second, the quit-claim deed from the district to the township is valid. So the district properly conveyed the ownership of the school to the township.

The district court then quieted title to the school in the township instead of the district.

The Rouses contend that in the township's rule 179(b) motion, the township raised for the first time a claim to the school under Iowa Code section 297.22. The Rouses argue, therefore, that the district court erred

when it decided the case under section 297.22. The court's original ruling, the Rouses say, should stand.

■ A rule 179(b) motion is essential to preserve error when a trial court fails to resolve an issue, claim, defense or legal theory properly submitted. The motion relates to issues properly raised in the district court before entry of final judgment and not ruled on by the court. *Kernodle v. Commissioner of Ins.*, 331 N.W.2d 132, 134 (Iowa 1983).

In ruling on the township's rule 179(b) motion, the district court conceded that the township had not asserted its claim under section 297.22 in its answer, at trial, nor in its posttrial brief. Nevertheless, the court was persuaded that our decision in *Baty v. Binns*, 354 N.W.2d 777, 779–80 (Iowa 1984), provided a basis for the township's postjudgment assertion of its new legal theory. In interpreting our *Baty* decision, the district court concluded

the Iowa supreme court has held that erroneous conclusions of law may be challenged by a rule 179(b) motion even though the defendant tried his case-in-chief on an entirely different theory.

■ Although the Rouses make a strong argument for distinguishing *Baty*, we need not decide whether the district court erred when it decided the case under section 297.22 in its ruling on the rule 179(b) motion. We so conclude because there is a basis in the record to support the district court's decision quieting title to the school in the township. Even though the court did not rely on this basis, we are nevertheless obliged to affirm its decision. *See Grefe & Sidney v. Watters*, 525 N.W.2d 821, 826 (Iowa 1994) ("However, we are obliged to affirm an appeal where any proper basis appears in the record for a trial court's judgment, even though it is not one upon which the court based its holding."). We proceed to discuss the basis in the record to support the district court's final judgment.

### V. To Whom Did the Reversionary Interest Belong?

■ To answer this question we must look to the language of the reverter statute in existence at the time the school ceased to exist. The school ceased to exist in 1958.

The language of the reverter statute in existence at that time pertinently provided:

Any real estate ... owned by a school corporation ... and heretofore used as a schoolhouse site, and which, for a period of two years continuously has not been used for any school purpose, shall revert to the *then owner* of the tract from which the same was taken, provided that *said owner* of the tract last aforesaid shall, within the time hereinafter prescribed, pay the value thereof to such school corporation [now referred to as school district].

Iowa Code § 297.15 (1958) (emphasis added).

The words "then owner" and "said owner" in the statute clearly refer to the party who owned the tract at the end of the two-year period during which the schoolhouse site was not used for any school purpose. The schoolhouse site reverts to such owner provided such owner pays the value for the site to the school district. In short, the clear meaning of the words "then owner" and "said owner" is that only such owner has the reversionary interest under section 297.15. If the "then owner" conveys the tract from which the school site was taken without paying the value of such site to the school district, the owner forfeits the reversionary interest. Any subsequent owner then has no reversionary interest under section 297.15.

We think this interpretation is sound. We also think the interpretation is consistent with the purpose behind other statutory devices limiting the life of reversionary interests created by deed rather than by statute. *See, e.g., Presbytery of Southeast Iowa v. Harris*, 226 N.W.2d 232, 236 (Iowa 1975) ("We are persuaded [that Iowa Code sections 614.29–614.38 collectively referred to as our Marketable Record Title Act] clearly represent a salutary attempt on the part of our General Assembly to keep pace with public demands for needed reforms in the field of land title conveyancing practices.... [T]hey are 'designed to shorten the period of search required to establish title in real estate and give effect and stability to record titles by rendering them marketable and alienable—in substance to improve and render less complicated the land transfer system.' ").

■ The Rouses correctly point out that the reversionary interest in section 297.15

vests at the end of the two-year nonuse period. *See Waddell v. Board of Directors,* 190 Iowa 400, 405–07, 175 N.W. 65, 67–68 (1919). But this vesting does not change our conclusion. We have held that this reversionary interest can be abandoned or forfeited. *See Calamus Community School Dist. v. Rusch,* 299 N.W.2d 489, 490 (Iowa 1980) (Failure of defendants, who owned the land abutting site of abandoned schoolhouse, to comply with requirements of section 297.15 pertaining to reversionary interest in school property resulted in their forfeiture of any statutory reversionary right.).

Here the two-year nonuse period ended in 1960. At that time Elvin G. Stocker was the "then owner" of the tract of land from which the school was taken. He owned the tract until he died in 1985. For twenty-five years Stocker had the opportunity to exercise his reversionary right to the school and chose not to do so. So when he died, his reversionary interest died with him. The Rouses never had any reversionary interest under section 297.15 because they were not the "then owners" of the tract in 1960—the end of the two-year nonuse period.

When the district quit-claimed its interest in the school to the township, the township acquired such interest free of any section 297.15 reversionary interest. Accordingly, the district court correctly quieted title in the school to the township. We affirm.

**AFFIRMED.**